782 P.2d 50

STATE OF ALASKA, ex rel. Cheri
SWEAT, Plaintiff–Respondent,

v.

Creg HANSEN, Defendant–Appellant.

No. 17183.

Court of Appeals of Idaho.

Oct. 31, 1989.

Swafford & Ward, Idaho Falls, for defendant-appellant. Ronald L. Swafford argued.

Jim Jones, Idaho Atty. Gen. by Margaret C. Lawless (argued), Deputy Atty. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

This is an appeal from a district court decision upholding an order of filiation which named Creg Hansen as the father of a minor child. The dispositive issue is whether the magistrate properly admitted an expert's report containing the result of a blood test. Hansen contends that the report was not properly verified as required by statute. We affirm the district court's decision and award attorney fees to the respondent in this appeal.

The relevant facts are as follows. The State of Alaska brought an action for child support against Hansen under the Revised Uniform Reciprocal Enforcement of Support Act (RURESA). See I.C. § 7–1048 et seq. and Alaska Stat. § 25.25.010 et seq. Alaska sought partial reimbursement of public assistance provided to the child's mother, Cheri Sweat. Alaska further requested an order directing Hansen to pay child support in the future. As provided under RURESA, the Alaska complaint was transmitted to Blaine County, Idaho, where Hansen resided.

Hansen denied paternity. A magistrate ordered a test of blood samples taken from Hansen, the mother and the child, pursuant to I.C. § 7–1116. The magistrate then bifurcated the proceedings—holding a trial solely to establish paternity, and reserving the question of support for a later determination. At trial the magistrate admitted over Hansen's objection the blood test result showing a 99.13% probability that Hansen was the father. The mother and Hansen also testified. After reviewing all the evidence, the magistrate determined that Hansen was indeed the child's father. An order of filiation was entered, prompting Hansen to appeal. The district court affirmed and Hansen appealed again.

I

Where, as here, the issues before us are the same as those considered by the district court acting in an appellate capacity, we review the record with due regard for, but independently of, the district court's decision. *Hentges v. Hentges*, 115 Idaho 192, 194, 765 P.2d 1094, 1096 (Ct.App.1988). Our independent review in this case focuses upon the magistrate's admission into evidence of the blood test result.

A

The threshold inquiry is whether Hansen adequately preserved this issue on appeal by making a timely objection to the evidence. When blood tests have been ordered by a court to establish paternity, I.C. § 7–1116(1) provides that the judge "shall admit" a "verified expert's report" at trial "unless a challenge to the testing procedures or the blood analysis has been made twenty (20) days before trial." Although Hansen received a copy of the blood test report well before trial, he did not object until the day the trial began. He then asserted, unsuccessfully, that the report was inadmissible because it was unverified.

On appeal, Hansen contends that the asserted lack of verification not only rendered the report inadmissible but also excused his failure to make an earlier objection. He argues that I.C. § 7–1116(1)

requires an objection twenty days before trial only if the expert's report is verified. For reasons we will explain in a moment, we think the report was adequately verified. But we pause to note that Hansen's narrow reading of I.C. § 7–1116(1) is unpersuasive. The statute's plain import is that any challenge to the admissibility of a blood test report should be raised twenty days before trial. The purpose of this requirement is to allow the plaintiff sufficient time to subpoena experts to testify on the blood analysis methodology, the chain of custody, or other issues affecting admissibility of the report. The verification itself could be such an issue. An asserted lack of verification may be a ground for objection, but it is not an excuse for making the objection tardily.

B

Nonetheless, to demonstrate that the outcome of this case does not turn merely upon a question of timeliness, and to provide guidance in future cases, we will consider the verification issue on its merits. The verification requirement is imposed by I.C. § 7–1116(1), quoted above. Idaho Code § 51–102(6) defines "verification" as "an affidavit of the truth of the facts stated in the instrument to which it relates." Similarly, "affidavit" is defined as "a declaration in writing, under oath, as sworn to or affirmed by the declarant before a person authorized to administer oaths." I.C. § 51–102(5). Except as otherwise explained in the affidavit itself, the affiant must have personal knowledge of the information conveyed and must swear to its validity. *Mountain States Resources, Inc. v. Ehlert*, 195 Mont. 496, 636 P.2d 868, 872 (1981).

Here, the expert's report was comprised of a five-page affidavit attached to a two-page laboratory report of the blood test result. The affidavit was signed under oath before a notary public by the supervisor of the blood testing laboratory. The supervisor, Victoria Divita, attested to the chain of custody of the blood samples and

to the accuracy of the test result.[1] But Hansen would have us hold that verification requires more than this—that there must also be a separate statement at the end of the document stating that the information is true and correct to the best of the signer's knowledge. We disagree.

The Divita affidavit met the requirements of personal knowledge and validation. It contained many examples of the affiant's personal knowledge of the information conveyed. For instance, she stated that she directly supervised the technicians who conducted the test on the blood samples in this case, and that she later performed or reviewed the same test—obtaining the same result. In addition, Ms. Divita swore to the validity of the test result. We conclude that this affidavit was sufficient to verify the expert's report for the purpose of I.C. § 7–1116(1). There was no need for Ms. Divita to add a redundant statement at the end of her affidavit, simply to reiterate that all of the foregoing was true to the best of her knowledge. Because the expert's report was properly verified, the magistrate was required by I.C. § 7–1116 to admit it.[2]

## II

■ The State of Alaska, as represented by the Idaho Attorney General, has requested an award of attorney fees and costs in this appeal. The state invokes I.R.C.P. 11(a)(1) and I.C. § 12–121, arguing that the appeal was brought groundlessly and without good faith.[3] We have previously stated our position that Rule 11(a)(1) is not a broad compensatory law, but is a court management tool. As we said in *Kent v. Pence*, 116 Idaho 22, 773 P.2d 290 (Ct.App.1989), the rule does not exist to duplicate I.C. § 12–121, which has long been construed to authorize an attorney fee award in any civil case brought frivolously, unreasonably, or without foundation. *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979). Rather, the rule serves a separate, cognizable purpose, focusing upon discrete pleading abuses or other types of litigative misconduct within the overall course of a lawsuit. *Kent*, 116 Idaho at 23, 773 P.2d at 291. *Compare Stevens v. Fleming*, 116 Idaho 523, 777 P.2d 1196 (1989) (approving use of Rule 11 sanctions where appellants' attorney failed to make proper factual inquiry before filing suit). Here, the state does not contend that any particular litigative misconduct occurred during the course of this lawsuit; instead, it simply argues that Hansen's appeal was meritless.

Therefore, we will not award attorney fees under Rule 11(a)(1). However, we believe an award may, and should, be made under I.C. § 12–121. Attorney fees are awardable under the statute if the law is well-settled, the facts have been found upon substantial evidence, and the appellant has made "no substantial showing that the [lower] court misapplied the law" to those facts. *Davis v. Gage*, 109 Idaho 1029, 712 P.2d 730 (Ct.App.1985). In our

---

1. The affidavit began, "I, A. Victoria Divita, being first duly sworn and under oath, depose and say....". It concluded with the phrase, "I, the undersigned, being first duly sworn, on oath state that we [sic] have reviewed this report and verify it as a true and accurate representation of the red cell and HLA typings for the individuals named herein."

2. In his brief, Hansen has raised two related issues concerning admission of the expert's report. He urges (a) that his name was spelled incorrectly, and (b) that he was sent a copy only of an unverified, rather than verified, expert's report. For reasons already stated, we have concluded that the report was verified. Hansen's copy conformed in all material respects to the report ultimately admitted. It is true, on the other hand, that Hansen's name was misspelled

on the report. However there was abundant extrinsic evidence presented to the magistrate that the report did in fact relate to appellant Hansen. There was no genuine reason to doubt the identification of Hansen's blood sample.

3. The state's brief requested attorney fees on appeal, referring to Rule 11(a)(1) but omitting I.C. § 12–121. The state's counsel later invoked I.C. § 12–121 at oral argument. We think this was permissible, although not a model practice. Where, as here, an issue such as attorney fees has been properly raised in a brief, additional legal authorities pertaining to that issue may be presented orally or in writing. Moreover, the state's argument for the award of attorney fees under I.C. § 12–121 was virtually identical to its misdirected argument in support of an award of fees under Rule 11.

**930**

perception, Hansen has made no substantial showing that the magistrate misapplied the law. We conclude that the appeal was brought and pursued unreasonably and without foundation. Thus, we award reasonable attorney fees on appeal, to be determined in accordance with I.A.R. 41.

The decision of the district court, upholding the magistrate's order of filiation, is affirmed. Costs and attorney fees to respondent.

WALTERS, C.J., and WESTON, J. Pro Tem., concur.