785 P.2d 634

**Orvil DURRANT and Faye Durrant, husband and wife; Kenneth W. Sellers, Plaintiffs–Appellants, Cross–Respondents,**

v.

**Ruby CHRISTENSEN, Defendant–Respondent, Cross–Appellant.**

**No. 17678.**

Supreme Court of Idaho.

Jan. 17, 1990.

paid.

Whittier, McDougall, Souza, Murray & Clark, Ctd., Pocatello, for appellants. John Souza, argued.

Robert M. Kerr, Jr., Blackfoot, for respondent.

BOYLE, Justice.

Plaintiffs-appellants, Orvil and Faye Durrant and Kenneth W. Sellers, (hereafter "Durrant and Sellers") bring this appeal challenging an order by the district court

awarding attorney fees and costs to defendant. The defendant-respondent, cross-appellant, Ruby Christensen, (hereafter "Christensen") cross-appeals on the issue of denial of certain costs and fees. All parties are residents of Bingham County, Idaho.

Durrant and Sellers are landowners whose irrigation water crosses property owned by L & R Christensen Investments Limited. They filed a complaint against Christensen seeking an adjudication of the respective parties' water rights and a permanent restraining order prohibiting Christensen from interfering with their diversion and use of water. In her answer, Christensen asserted that she was not the owner of the property, denied all allegations, and the parties stipulated to entry of a temporary restraining order to maintain the status quo.

Thereafter, Christensen produced a certified copy of a quitclaim deed revealing that title to the real property in question was held by L & R Christensen Investments Limited and *not* Ruby Christensen. This resulted in the restraining order being vacated and the complaint was dismissed without prejudice.

Christensen's memorandum of costs and attorney fees requested a total of $4,612.50 in attorney fees and $264.65 in costs. The district court awarded her $1,000.00 attorney fees for her efforts in dissolving the restraining order, and limited her cost award to $32.00 for the filing fee and copies of court documents. The district court denied Christensen's other costs because they were not itemized as required by I.R.C.P. 54, and the additional expenses incurred were not necessary in her defense against the restraining order.

In ruling on Christensen's motion for attorney fees, the district court found that neither party nor their attorneys proceeded in "bad faith," and fees were not awarded under I.R.C.P. 11. The district court ruled that the case involved water rights and not a commercial transaction, thus did not award fees pursuant to I.C. § 12-120. The district court also concluded that Durrant and Sellers did not pursue their action frivolously, unreasonably or without foundation, and Christensen was not entitled to an award of attorney fees pursuant to I.C. § 12-121.

All parties have appealed the district court's decision on the attorney fees and costs issues.

I.

Prevailing Party—Award of
Costs and Fees.

■ Durrant and Sellers raise two arguments on appeal. First, they contend that Christensen is not the prevailing party, and second, that the proceedings amounted to an adjudication on the merits and therefore Christensen is not entitled to an award of costs and fees.

I.R.C.P. 54(d)(1) provides:

(A) Parties Entitled to Costs. Except when otherwise limited by these rules, costs shall be allowed as a matter of right to the prevailing party or parties, unless otherwise ordered by the court. (B) Prevailing Party. In determining which party to an action is a prevailing party and entitled to costs, the *trial court* shall *in its sound discretion* consider the final judgment or result of the action in relation to the relief sought by the respective parties, ... (Emphasis added.)

As the above rule provides, determination of the prevailing party for purposes of an award of costs is committed to the sound discretion of the trial court. *Gilbert v. City of Caldwell*, 112 Idaho 386, 732 P.2d 355 (Ct.App.1987). The burden is on the party disputing the award to show an abuse of this discretion, *Anderson v. Ethington*, 103 Idaho 658, 651 P.2d 923 (1982), and absent an abuse of discretion, the district court's award of costs will be upheld. *Martsch v. Nelson*, 109 Idaho 95, 705 P.2d 1050 (Ct.App.1985).

Durrant and Sellers contend that their objective in filing this action was to establish a water use rotation schedule, and although the temporary restraining order was vacated, it established a rotation scheme which the parties have continued to

follow. Thus, Durrant and Sellers argue in effect that Christensen is not the prevailing party because she continues to follow the rotation scheme established in the temporary restraining order. We find this argument insufficient to show an abuse of discretion by the district court. Christensen was not the owner of the property, and the complaint against her was dismissed and the restraining order dissolved. The district court's determination that Christensen is the prevailing party is affirmed.

 Durrant and Sellers next contend that an award of attorney fees under I.R.C.P. 65(c) should not apply in this case. Rule 65(c) allows the trial court to award costs and reasonable attorney fees to any party who is found to have been wrongfully enjoined or restrained. Durrant and Sellers argue that the costs and fees awarded to Christensen were attributable in defending the merits of the case and therefore the provisions of I.R.C.P. 65(c) should not apply. They further contend because the parties continue to follow the water rotation scheme established in the temporary restraining order, that constituted an adjudication on the merits. Again, the argument is unconvincing. First, the complaint against Christensen was dismissed because she was not a proper party. If there is no valid claim to pursue, and the action was dismissed, there can be no adjudication on the merits as against the party in whose favor a dismissal was entered. Second, Idaho case law interpreting Rule 65(c) allows recovery of attorney fees if legal services necessary to defend the merits of the case were identical to services performed in dissolving a restraining order. *Davidson Grocery Co. v. United States Fidelity & Guar. Co.*, 52 Idaho 795, 21 P.2d 75 (1933); *McAtee v. Faulkner Land & Livestock, Inc.*, 113 Idaho 393, 744 P.2d 121 (Ct.App.1989); *Devine v. Cluff*, 110 Idaho 1, 713 P.2d 437 (Ct.App.1986). Thus, assuming there was an adjudication on the merits, recovery of attorney fees would be appropriate provided the trial court found the restraining order and merit issues were identical as in *McAtee v. Faulkner*. Finally, since Christensen was not a proper party to this action, any injunction or restraint

against her would be wrongful and she would be entitled to an award of fees. I.R.C.P. 65(c).

We find no abuse of discretion by the district court in its award of attorney fees and costs for Christensen's efforts in dissolving the restraining order. We find that the amount of the award of attorney fees is reasonable, and affirm the district court's decision awarding attorney fees and costs to Christensen in that regard.

## II.

### I.R.C.P. 11—Attorney Fees.

 On cross-appeal, Christensen argues that she should have been awarded all of her attorney fees and costs pursuant to I.C. § 12–120(3) and I.R.C.P. 11. In certain civil actions, I.C. § 12–120 provides for an award of reasonable attorney fees to the prevailing party, and subsection (3) allows an award of fees "in any commercial transaction." The rule defines "commercial transaction" as "all transactions except transactions for personal or household purposes." Christensen maintains that this suit involves a "commercial transaction" because it does not relate to a personal or household purpose, and claims she is entitled to an award of fees pursuant to I.C. § 12–120. We disagree. This legal action did not pertain to a transaction, commercial or otherwise, and we affirm the district court's denial of costs and fees claimed under I.C. § 12–120(3).

 Christensen next asserts that the district court applied an incorrect legal standard of "bad faith" in denying defendant's motion for the imposition of sanctions under I.R.C.P. 11. We agree and remand to the district court for a determination of this issue pursuant to I.R.C.P. 11. *Stevens v. Fleming*, 116 Idaho 523, 777 P.2d 1196 (1989); *State of Alaska ex rel. Sweat v. Hansen*, 116 Idaho 927, 782 P.2d 50 (Ct.App.1989).

I.R.C.P. 11, as amended in 1985, is identical to the 1983 amendment of Fed.R.Civ.P. 11. Our adoption of amended Rule 11, containing language identical to the Feder-

al Rule, presumably carries with it the interpretation placed upon that language by the federal courts. *Chacon v. Sperry Corp.*, 111 Idaho 270, 723 P.2d 814 (1986). Both amended rules require that pleadings, motions and other papers meet certain criteria, and failure to comply may result in the imposition of sanctions. I.R.C.P. 11, as amended, provides in pertinent part:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief *after reasonable inquiry* it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. *If a pleading,* motion or other paper is *signed in violation of this rule,* the court, upon motion or upon its own initiative, *shall impose* upon the person who signed it, a represented party, or both, *an appropriate sanction,* which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee. (Emphasis added.)

Recent federal court decisions regarding Fed.R.Civ.P. 11 hold that the "bad faith" standard is no longer applicable. Rather, the federal courts apply an objective standard of "reasonableness under the circumstances". *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 829 (9th Cir.1986); *Rodgers v. Lincoln Towing Serv., Inc.,* 771 F.2d 194, 205 (7th Cir.1985); *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 253 (2d Cir.1985).

In *Zaldivar,* the Ninth Circuit Court of Appeals held that subjective bad faith is not an element to be proved under Rule 11, but sanctions shall be assessed if the pleading is frivolous, legally unreasonable, or without factual foundation. 780 F.2d at 829, 831. In *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243 (2d Cir. 1985) the circuit court of appeals held that "the language of Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a *reasonable inquiry* into the viability of a pleading before it is signed ... A showing of *subjective bad faith is no longer required* to trigger the sanctions imposed by the rule." 762 F.2d at 253. (Emphasis added.)

In light of these federal decisions interpreting language that is identical to that contained in the Idaho version of I.R.C.P. 11, we hold that reasonableness under the circumstances, and a duty to make a reasonable inquiry prior to filing an action, is the appropriate standard to apply. A showing of subjective bad faith is no longer necessary for the imposition of sanctions, and we hold that the district court applied an incorrect legal standard when denying defendant's motion for Rule 11 sanctions.

The trial court should examine Rule 11 sanctions in light of the foregoing authorities and determine whether the plaintiffs made a proper investigation upon reasonable inquiry. Accordingly, we remand for reconsideration the issue of Durrant and Sellers' compliance with amended Rule 11 and the possible imposition of sanctions to be determined after further evaluation of the facts by the district court.

### III.

### Attorney Fees on Appeal.

Christensen has requested an award of attorney fees on Durrant and Sellers' direct appeal as provided for by I.A.R. 41(a) and I.C. § 12–121. Such an award is appropriate when we are left with an abiding belief that the appeal has been brought or defended frivolously, unreasonably, or without foundation. *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979). We are of the opinion that the direct appeal by Durrant and Sellers falls within the *Minich* standard. The appellants, Durrant and Sellers, have presented

no persuasive argument that the district court, in granting attorney fees, abused its discretion or misapplied the law, and we award attorney fees on appeal to Christensen in an amount to be determined as provided by I.A.R. 41(d).

The district court's award of attorney fees and costs to Christensen is affirmed. We remand to the district court for further proceedings on the issue of Durrant and Sellers' compliance with I.R.C.P. 11 in filing the action against Christensen. Costs and attorney fees on appeal to Christensen.

BAKES, C.J., and JOHNSON and McDEVITT, JJ., concur.

BISTLINE, Justice, dissenting.

My reasons for being unable to join the Court's opinion are easily stated. Although the opinion reads well, there are certain facts not presented which should be given full consideration in coming to a fair appellate determination. A district court's judgment should not be dealt a reversal unless such is absolutely required. There is only one aspect of this case in which Judge Herndon may have been led astray, which is in awarding $1000 in attorney fees to Ruby Christensen. Nevertheless, although that amount by today's standards is not exorbitant and ordinarily would appear to be a proper amount to recompense her for what she is probably being charged by her attorney, any award cannot be justified. Other than for that monetary award, it is clear that Judge Herndon's disposition of the issues presented to him was substantiated. This Court's opinion, especially the second paragraph, presents an inconsistency which the interests of justice should not tolerate. Attention is directed to the opinion wherein it is accurately stated that, "in her answer, Christensen asserted that she was not the owner of the property, and *the parties stipulated* to entry of a temporary restraining order to maintain the status quo." True, she did disclaim ownership, but equally true, she was *an* owner, although perhaps not the sole owner.[1] As such she was *a* proper party defendant.

What she actually contended was only that the *title of record* was not vested in her name, which is not the equivalent of averring that she was not an owner. This not insignificant problem will be further discussed after the $1000 attorney fees award is further questioned. That award was bottomed on Christensen's legal fees incurred in obtaining a dissolution of the above-mentioned temporary restraining order.

Orville Durrant, his spouse, and Kenneth Sellers are the plaintiffs; their objective was to obtain what they considered to be the fair share of the irrigation water which was allocated to their property. It was the plaintiffs who requested that the status quo allocation of water be left in place during the ensuing period of litigation. Without offering any contest to the plaintiffs' request for the temporary restraining order, it was Christensen through counsel who *stipulated* to the entry of the requested order, and the trial court's order was entered pursuant to the stipulation. Supposedly the stipulation and the order were purposed toward maintaining peace between the neighboring parties while evidence and law was presented and the court resolved the dispute.

However, it turned out otherwise. Christensen moved to set aside the very order to which she had stipulated! Conceded, had she not so stipulated, she could have moved to have it vacated. However, principles of law should have precluded her from stipulating to the entry of the order maintaining the status quo distribution of the water, and then turning around and moving to set it aside. Presumably entry of the stipulated order resulted from an agreement that during the pendency of the litigation *both* parties would benefit from a court order which prevented each from interfering with the flow of irrigation water while the action was pending. It was pursuant to their stipulation that the court's order was entered. There may be a more classic example of the application of judicial estop-

---

1. The Court's opinion somewhat ingeniously wholly avoids coming to grips with this actual factual circumstance by saying only that "Christensen was not *the* owner of the property."

pel, and/or equitable estoppel as well, but it is not readily brought to memory.

Moreover, it has to be remembered that Christensen was at all times the only named party defendant. As an apparent owner of the entire title (being in possession) and definitely a part owner of the property, ostensibly she had the consent of her co-owners [2] in order to enter into the stipulation. Likewise, she later would have had to obtain the consent of her co-owners authorizing her to move to vacate the district court order to which she and the plaintiffs had agreed. Forgetting for the moment the principles of equitable and judicial estoppel, and resorting to the vernacular, there is good reason to suggest what we see here is a pure, unadulterated case of western style bushwhacking. Today's majority countenances such conduct. Were it not for the district court's having been used as an instrumentality of this gamesmanship, such conduct might be tolerated. But, under these circumstances, I must regrettably dissent from the majority's opinion. My regret is not because of being obliged to dissent, but rather flows from my inability to dissuade four members of this Court from placing the Good (judicial) Housekeeping Stamp of Approval on the scenario so clearly laid before us. It does not trouble me in the least that a highly respected district judge was misled into allowing attorney fees to Christensen. The district judges have a formidable case load to cope with. They act not in concert with one or more other district judges, but rather *individually*. The time constraints placed upon them by this Court's administrative director also constitute a hazard which has to be considered. The individual justices who comprise this Court, however, enjoy the luxurious advantage of at all times having the benefit of input, advice and analysis from four other justices.

Some other aspects of the record which we review, apparently bothersome to me alone, constitute additional aggravation over the course which justice here has taken. One learns after some forty years of participation in the law, most of which was spent as a practitioner, to be somewhat circumspect. Earlier herein mention was made of Christensen's apparent authority to both enter into the stipulation and to later seek its dissolution. Such authority was apparently conferred upon her by her co-owners of the property, title to which was supposedly apparently conferred upon her by her co-owners of the property, title to which was in the name of a partnership. on observing that the co-owners of Christensen's property (property which is located adjacent to the plaintiffs' property), along with Christensen, were the witnesses who testified against the plaintiffs. That raised the question: On whose behalf did they so testify? The record and the transcripts of the hearing are not voluminous. On moderately close perusal thereof it is informative, but not surprising, to ascertain therefrom that Christensen's cost bill of expenses included as witness fees being charged against the plaintiffs, the following: Neal Powell, three days, at $61.20; Charles Frasure, two days, at $40.30; and Brady Bradford, three days, at $61.20.

At page 62 of the appeal record, an item of considerable interest listed for April 12 is the entry of 5.9 hours chargeable for conferring with DeAnn Bradford, a telephone call to Brady, and a "conference with client, Frasure and Powell, research." On April 13, an item is entered for 1.5 hours, a portion of which included a "conference with client, Bradford and Powell." On April 14, a charge of 0.4 hours was

**2.** The deed to the property was supposedly transferred to L & R Christensen Investments Limited Partnership approximately two years before these events transpired. Idaho Code § 53–213 mandates the filing of the certificate of limited partnership with the secretary of state. However, the secretary of state has no record of L & R Christensen Investments before June 16, 1988, a full four months *after* the complaint in this action was filed. It is very difficult to vest ownership in an entity which does not yet exist, and it would have been impossible for the plaintiffs to know of the existence of the partnership if no record of its existence was on file. Moreover, the documents at the secretary of state's office list Ruby Christensen as the general partner in L & R Christensen Investments, with Kit Christensen, Mary C. Sellers, and DeAnn C. Bradford listed as the limited partners. *See* Appendix A.

entered for a telephone call to Sousa. On April 15, the entry was 9.0 hours which included court trial time, a conference with the client and witnesses. A post-trial item was a 1.0 hour charge, which included a call with Brady and a conference with Frasure. It seems clear that Brady Bradford, Neal Powell, and Charles Frasure, although called as "witnesses", were involved as Christensen's co-owners and, accordingly, were in actuality unnamed defendant parties participating in the litigation. It appears likely that defense counsel himself did not consider them as parties, even though they were most obviously co-owners, simply because they were not so designated in the complaint.

It is beyond cavil that plaintiffs' suit was brought to settle water rights as between the property which they owned and possessed and the owners of the adjacent property. It is clear that all of the involved parties, both plaintiffs and defendants, came into court and all participated in the trial. Not only did all of the defendants participate in the courtroom proceedings before Judge Herndon, but they all participated in the pretrial conferences with defense counsel. Whether the non-party defendants reimbursed Ruby C. Christensen directly or paid charged fees directly to defense counsel, is of little moment. Accepting that Christensen was not the sole owner of the property, and accepting that her "witnesses" owned whatever part of the property she did not own, and seeing as meaningless the fact that title of the property was not placed in the "witnesses" and Christensen, but rather placed in the name of an unknown partnership, it should have been obvious to Christensen's attorney that together, collectively, those persons were the ones who owned the property to which the water rights were appurtenant. They were all conferring with defense counsel as to what course of action should be taken.

Rather than come out in the open and gain a meaningful adjudication, the defendants chose the delaying tactic of asking the court to dismiss the action. With all of the interested owners in both properties appearing in the action, the court properly should have disregarded the technicality that only Christensen was a named party [3] and proceeded to determine the merits as to the use and quantity of the water rights. There is a large body of law which holds that non-named parties who have a financial interest in a piece of property involved in litigation, and who participate in the defense of an action brought against one of them are in court for all purposes. *See, e.g., Souffront v. LaCompagnie des Sucreries de Porto Rico*, 217 U.S. 475, 30 S.Ct. 608, 54 L.Ed. 846 (1910); *Bros., Inc. v. W.E. Grace Mfg. Co.*, 261 F.2d 428 (5th Cir.1958). Persons who are not named parties in an action can nevertheless be bound by the determination of issues litigated in that action if they controlled or substantially participated in the control of the litigation or they had the opportunity to control the presentation of a party to the litigation but did not do so. *Montana v. U.S.*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *State Farm Fire & Cas. v. Reuter*, 299 Or. 155, 700 P.2d 236 (1985). In the instant case, even if the suit had been brought against the partnership, seemingly it would have fallen to Ruby Christensen, as the only general partner, to defend it. All of which is academic, other than for providing additional good reason for holding that the defendants were not entitled to any award of attorney fees. Judge Herndon did recognize that they were not entitled to any fees for prevailing on the main action—which was to obtain a dismissal of the action. The delaying tactics of the defendants worked, and put off a decision on the merits regarding the water rights appurtenant to the properties involved. Accordingly, nothing was adjudicated.

A more preferred course of action would have been for the un-named defendants to voluntarily come in as named parties and have the issues resolved. Who, it might be asked, gained anything of substance from

---

**3.** This assumes that defense counsel gave some intimation to the court as to the true state of · affairs.

a court proceeding which consumed the district court's time, time that could have been better put to resolving other lawsuits? Apparently, only Christensen, who did obtain $1000 as attorney fees not for gaining dismissal of the main action, but solely for obtaining vacation of the temporary restraining order.

The district court was 100 percent correct, in view of these unusual circumstances, in not awarding any attorney fees to the defendants, named or unnamed, for obtaining dismissal of the underlying action. Nevertheless, Judge Herndon is being handed an undeserved reversal because of the majority's perception that the wrong rule was applied in his order denying attorney fees to the defendants. On taking any reasonable view of this litigation, no error was committed in that regard.

The majority's directions to the district court for further proceedings on remand are not substantiated by the record. Likewise, the conclusions reached by the majority are not sustained. In reviewing Christensen's request for attorney fees under Rule 54(b) and I.C. §§ 12–120, 12–121, and under Rule 11, this Court states that the district court determined that neither plaintiffs nor their attorney proceeded in "bad faith," and practically those same words were spoken by Judge Herndon at oral argument on Christensen's motion for an award of fees. Tr. 24. However, seconds later Judge Herndon stated his belief that the plaintiffs did not pursue the case "frivolously or in bad faith nor so plainly fallacious as to be frivolous or that it was frivolously, unreasonably, or without foundation ... I think it was probably prosecuted in good faith as far as the parties were concerned. They wanted their water in the ditch and they thought their neighbor had it." Tr. 25.

The majority, in what the trial bench and bar may well perceive to be an improvident rush to apply the recently amended and re-interpreted Rule 11, cites to the Zaldivar holding which instructs that Rule 11 "sanctions shall be assessed if the pleading is frivolous, legally unreasonable, or without factual foundation." 780 F.2d 823, 829

(9th Cir.1986). Borrowing an expression which Justice Shepard used on appropriate occasions, it comes as passing strange that the majority is unaware of Judge Herndon's assessment of the plaintiffs' action, i.e. "that it was not pursued frivolously, unreasonably, or without foundation." Tr. 25. We already have the trial court's specific finding that the plaintiffs were not guilty of violating the sanctity of Rule 11, as that rule was interpreted in Zaldivar.

Reaching to the eastern seaboard, the majority then produces the holding in the Eastway case from the Second Circuit Court of Appeals to support its view that it is an attorney's duty to conduct a reasonable inquiry prior to filing an action. The majority today attaches that clause onto Rule 11, and directs Judge Herndon to reconsider his denial of sanctions. The majority eschew giving any thought whatever to the rather obvious fact that thereby the court is dictating that a retroactive application be made of today's adoption of Eastway. Compounding that mischief, the majority's direction on remand includes reconsideration in light of both Zaldivar and Eastway, whereas Judge Herndon has specifically already applied the rule of Zaldivar. By implication Judge Herndon was aware of the existing state of facts known to counsel for the plaintiffs when counsel filed the action, i.e., "they [plaintiffs] wanted their water and they thought their neighbor [Christensen] had it." Tr. 25. Therefore, there is no reason to doubt Judge Herndon's application of the Zaldivar standard.

If the association of district judges were to review the Court's opinion, it would not come as a great surprise were the association to rule the opinion fallacious and without foundation. Such an action would especially be expected from the association with regard to the majority's failure to consider that plaintiffs' counsel had no reason to suspect that the plaintiffs were mistaken or negligent in their belief and understanding that their neighbor, Christensen, was the owner of the property on which she was resident and on which property she had resided for some time. In fact, because the partnership agreement

had not been filed with the secretary of state prior to the filing of the complaint, an extremely diligent inquiry would have yielded the same result. Clearly, it was a case of apparent ownership, and Christensen was a proper party defendant inasmuch as she continued to have an ownership interest in the property, notwithstanding the placing of title in an entity created for the sole purpose of holding title. Most, if not all attorneys should find it inconceivable that an attorney henceforth is not entitled to obtain the facts from his client as against the hiring of a private investigator, on pain of being assessed a judicial fine under the provisions of Rule 11.

Finally, there is no enchantment to behold in the Court's assessment of attorney fees on appeal against plaintiffs' attorney for appealing solely to challenge the award of attorneys fees under Rule 65(c). Only by sustaining that award of fees in the trial court is the majority able to enter this additional, but unjustified sanction. For all of the reasons above, I respectfully dissent.

## APPENDIX A

### CERTIFICATE OF LIMITED PARTNERSHIP
### OF
### L & R CHRISTENSEN INVESTMENTS LIMITED PARTNERSHIP
### an Idaho Limited Partnership

RECEIVED
SEC. OF STATE
86 JUN 16 PM 1 54

The parties hereto do hereby certify that an Agreement was made effective the ___7___ day of ___January___, 19_86_, at Blackfoot, Idaho by the following, herein called "General Partner":

RUBY C. CHRISTENSEN

and by the following, herein called "Limited Partners":

KIT L. CHRISTENSEN
MARY C. SELLERS
DEANN C. BRADFORD

W I T N E S S E T H :

The parties hereto, on the date described above, formed a Limited Partnership pursuant to the provisions of the Idaho Limited Partnership Act, and sign and swear to this certificate as required by Idaho law.

1. __Name.__ The name of this Limited Partnership is L & R CHRISTENSEN INVESTMENTS LIMITED PARTNERSHIP, an Idaho Limited Partnership.

2. __Business.__ The general character of the Partnership business shall be to buy, sell and lease real estate and equipment, manage investments and securities portfolios, and to conduct a general business as thereto related.

3. __Principal Place of Business.__ The location of the principal place of business of the Partnership is 265 West Francis, Blackfoot, Idaho 83221.

4. Registered Agent. The registered agent for service for this Limited Partnership is Ruby C. Christensen, 265 West Francis, Blackfoot, Idaho 83221.

5. The Partners. The General Partner and Limited Partners of this Limited Partnership are as follows:

| GENERAL PARTNERS | PLACE OF RESIDENCE |
|---|---|
| Ruby C. Christensen | 265 West Francis<br>Blackfoot, Idaho 83221 |

| LIMITED PARTNERS | PLACE OF RESIDENCE |
|---|---|
| Kit L. Christensen | P.O. Box 2480<br>Valdez, AK 99686 |
| Mary C. Sellers | 2516 South Orchard Dr.<br>Bountiful, Utah 84010 |
| DeAnn C. Bradford | 100 North 272 East<br>Blackfoot, Idaho 83221 |

6. Term. The Partnership shall begin on the __7__ day of __January__, 19 _86_, and shall continue for twenty five (25) years thereafter unless sooner dissolved by law or by agreement of the parties hereto or unless extended by a majority agreement of the Partners.

7. Additional Contributions. No additional contributions of the Limited Partners have been agreed upon.

8. Return of Contributions. No Limited Partner shall be entitled to withdraw or demand the return of any part of his capital contribution except upon dissolution of the partnership.

9. Profits. All annual net profits of the Partnership shall be divided among the General and Limited Partners in the same proportions as the Partners' then capital interest accounts, unless retained for the Partnership investment and business activities.

10. Assignments. A Limited Partner shall have the right to sell his interest in the Partnership acting through the guardian, but only after such Limited Partner gives to the Partnership a 120-day opportunity to purchase such interest, as explained in detail by the Partnership Agreement.

11. Additional Limited Partners. The General Partner may admit additional limited partners, subject to the limited partners' right of first refusal.

12. Priority Among Limited Partners. There is no priority of one Limited Partner over another as to the contributions or compensation by way of income.

13. <u>Continuance of Business</u>. Upon the death, retirement or insanity of the surviving General Partner, the Partnership shall dissolve unless continued by the remaining Partners and selecting when necessary a new General Partner. If the last surviving or serving General Partner has died, retired and/or becomes insane, then the Limited Partners holding interest in capital in excess of fifty percent (50%) of the capital owned by all Limited Partners may elect to continue the Partnership by selecting a new General Partner.

14. <u>Property Other Than Cash</u>. A Limited Partner may not demand property other than cash in return for his contributions.

15. <u>Amount of Cash and Agreed Value and Description of Other Property Contributed</u>. The Partners in the Limited Partnership have contributed their interest in the property as set forth in Schedule "A" attached hereto, with an agreed value of $71,500.00.

| Partners | Percentage Interest | Contribution |
|---|---|---|
| Ruby C. Christensen | 4.0% | $ 2860.00 |
| Kit L. Christensen | 32.0% | 22880.00 |
| Mary C. Sellers | 32.0% | 22880.00 |
| DeAnn C. Bradford | 32.0% | 22880.00 |

GENERAL PARTNER:

_Ruby C. Christensen_
Ruby C. Christensen

LIMITED PARTNERS:

_Kit L. Christensen_
Kit L. Christensen

_Mary C. Sellers_
Mary C. Sellers

_DeAnn C. Bradford_
DeAnn C. Bradford

82

SCHEDULE "A"

Attached to L & R CHRISTENSEN INVESTMENTS LIMITED
PARTNERSHIP dated the ___7___ day of ___January___, 19 86.
1. The following subject to encumbrances owed thereon to-
wit:

> A part of the East 1/2 of the Southeast 1/4 of
> Section 28 Township 2 South Range 36 East Boise
> Meridian. Beginning at a point which is West 1320
> feet from the Southeast 1/4 of said Section 28 and
> running thence North 2640 feet; thence East 1320
> feet thence South 1650 feet; thence West 660 feet;
> thence South 990 feet; thence West 660 feet to the
> Point of Beginning. Containing approximately 65
> acres more or less.

2. $100.00, representing $4.00 from Ruby C. Christensen;
and $96.00 ($32.00 each) from Kit L. Christensen, Mary C. Sellers
and DeAnn C. Bradford.

*Ruby C. Christensen*
Ruby C Christensen

STATE OF UTAH )
 :ss
COUNTY OF Salt Lake )
 On the ___22__ day of __April_____, 19 88, personally
appeared before me Ruby C. Christensen, the signer of the within
instrument, who duly acknowledged to me that she executed the
same.

Notary Public
Residing at: Salt Lake City, UT.

My Commission Expires:
3-26-89

No. L01413

L & R CHRISTENSEN INVESTMENTS
LIMITED PARTNERSHIP

Certificate of
LIMITED PARTNERSHIP

**STATE OF IDAHO**
**Department of State**
**Boise, Idaho**
Approved, filed and admitted to the
corporation records of the State of
Idaho
Date _____June 16, 1988_____
Time _____1:54 p.m._____

FEES PAID $ _60.00_____

Pete T. Cenarrusa
SECRETARY OF STATE

By: _____

Invoice # __79704_____

CCR # ___21366_____

Filing Party
L & R Investments
205 West Francis
Blackfoot, Idaho 83221

Registered Agent:

Ruby C. Christensen
205 West Francis
Blackfoot, Idaho 83221